Council is here and ready for the first case. So we will hear it now, Rituno V. Wood. Good morning. Jeff Campisi, Kaplan, Fox, and Kilsheimer, LLP for the Plaintiff Appellant. In granting defendants motion to dismiss at the pleading stage of the district court, misconstrued and misapplied both the Supreme Court's and this court's legal framework for assessing Sanner allegations and claims brought under Section 10b of the Securities Exchange Act of 1934. In the Second Circuit, Sanner can be demonstrated in two ways. Facts showing a motive and opportunity to commit fraud or facts showing circumstantial evidence of intent. You hear the the complaint's unique motive and opportunity allegations. However, the district court found the allegations did not, quote, create a unique motive significant enough to satisfy the PSLRA threshold, the high PSLRA threshold for Sanner. The complaint thus does not establish motive and opportunity to commit fraud. That's where the district court ran afoul of the legal framework. Where motive and opportunity alone is not enough to satisfy the high PSLRA standard for Sanner, the allegations, however, must be considered part of a holistic analysis and the district court failed to do this. Was the district court really saying that there was? I mean, I thought the district court was concluding that shareholder pressure was insufficient to establish a motive. Most corporate officers face these threats as part of their role. I know you're relying on our decision in Hain, but there both the district court and this court clearly gave some credence to the motive allegations because they included high volume trading. This doesn't seem the same type of case. Well, the district court's finding that most corporate officers are subjected to these types of pressures is baseless. He cites nothing for that. And indeed, the defendants, you know, recognize that and they try to rehabilitate that point. You know, they say that activist campaigns are a dime a dozen and ubiquitous, but it's just not true. If you look at their authority, it's in footnote four of their brief. They cite a couple of law review articles and at best those articles say. So is the problem, I mean, maybe the problem is both, but is the problem you're identifying the failure to properly evaluate the allegations of motive and opportunity, or it's the not considering motive and opportunity in conjunction with the circumstantial evidence? It's really a combination of both. I think what, if you look at But on the first point, which was the one you were leading with about the connection between them, the district court does say, you know, I don't think that the shareholder pressure is enough and so therefore the circumstantial evidence needs to be correspondingly stronger, right? That is what we've said, right? And that does show that the district court was thinking about between the allegations of motive and opportunity and the circumstantial evidence. It's true the district court doesn't say something like, I consider it all together in a holistic assessment or something. But like, there is a discussion of how the two things interact, right? Well, there really isn't. If you look at the end of his opinion where he does the purported holistic analysis, he doesn't even mention motive and opportunity. And it's really inconsistent with what he said earlier in the opinion, which the motive was a unique motive that was not significant enough. So he found it was unique. He found it was significant, but not significant on its own to meet the high PSLRA threshold. And Judge Menashe, you need to compare it to what this court has said where it's rejected general motive. If you look at all the cases cited by the where the allegations are in particular and they're insufficient or not sufficient. That's very different from what the district court found. He found that they were significant and unique, but not on their own to carry the day. So when he did his analysis at the end of the opinion, he doesn't mention motive and opportunity. That was error under the Haines-Celestial case. So you're just saying he didn't explain himself fully enough? I guess I see two different arguments. One saying he didn't engage in the sort of analysis we require. And another one just saying, well, he did, but he was wrong. I mean, he says things like, even collectively, plaintiffs' allegations do not come close, et cetera, et cetera. I mean, had he used the word holistically, I'm assuming that would have been enough? Or are you saying he had to write another 10 pages explaining the statement? He wasn't allowed to use shorthand? So it's clear from the district court's opinion that he didn't consider motive and opportunity. And we know that because he cites a count it, which in that case where there's no motive and opportunity credited, the allegations of circumstantial evidence of intent have to be correspondingly higher. So he cites a case that doesn't stand for every proposition that's part of his final conclusion that's a sign that he didn't engage in the holistic analysis? I guess I'm not following you. I mean, really. You cite lots of cases when you're issuing a decision, some which stand for particular components of your reasoning or your rationale. I mean, otherwise, if the rule were otherwise, you would be requiring a judge to always find a case that was 100% perfectly, wholly aligned with what you're deciding in this case. Otherwise, it's evidence that you've only engaged in the analysis that was performed in the other case? That doesn't seem to make much sense. Judge Nardini, there's no requirement for him to write 10 pages, but it's clear he didn't even consider it in the analysis. And that's the problem. He credits the allegations, says they're unique, says they're significant. Right. Your argument is that when he says collectively, he's talking about the circumstantial evidence or the evidence of circumstantial factors, but doesn't collectively consider the circumstantial evidence together with the motive and opportunity. Correct. And he talks about motive and opportunity, then moves on to circumstantial evidence. Correct. Now, is there any indication, given the way he treats that evidence and the degree to which he thinks it's compelling, that if it was collective, you'd go over the line? So in some prior cases, we've said, well, the circumstantial evidence was very close, and so it was a problem not to consider it in conjunction with motive and opportunity. But here, it does not seem like the district court thought it was very close. The district court even says something like, this does not come close to only considering the circumstantial evidence of intent. But if we've said that it's a problem when the circumstantial evidence of intent comes close, not to consider it in conjunction with motive opportunity, is it a problem when it doesn't even come close not to consider it together? The plaintiff asserts in the brief that that analysis was also problematic, that where the district court found the circumstantial evidence wasn't even close, that was wrong as well. The district court didn't engage with the facts and made baseless findings when it came to that conclusion that it wasn't close. Right, so just saying that the two things have to be considered together is not enough, right? You're also asking us to conclude the district court was wrong on the evidence, that the evidence actually allows for a much greater inference of scienter than the district court decided. Yes, Your Honor. But alternatively, if Your Honor determined that the district court's assessment was on the motive and opportunity wasn't sufficient because he didn't consider it, it could be remanded for a further evaluation without having to to look at the entirety of the opinion and reverse on that basis. So why do you think the motive opportunity is unique? So if we have said that shareholder pressure is not enough, why is this something more than shareholder pressure and a private benefit to the officers? The cases where the general corporate motives are not enough is where there's sort of generic pressure that virtually anybody that works at a public company, any insider is subjected to. And here the allegations are much different. The letters themselves are unique. That's something that's unusual. And the content of those letters, they're making specific threats and exerting pressure on Gulfport management on how they think the business should be run. So your argument is that it's shareholder pressure is a general situation, but an activist campaign makes it unique. Yeah, in this case, it is unique. General pressure to get the stock price up or to maximize the value, that undoubtedly is generic pressure that everybody is exposed to. Here, this is not that kind of pressure. You have specific threats and pressure directed at the individuals that gave rise to a unique motive to appease these specific shareholders and their specific needs. So it's not the general run-of-the-mill pressure to just maximize the value for shareholders. Here's this very specific pressure. What was the special, the private benefit to the officers as distinct from the general incentive to help the company perform? So here, the unique benefit that these insiders gained, they were able to... Wasn't it keep their jobs? In part, they were able to deflect the the activist shareholders. They were able to thwart the proxy campaign to remove management, and they were able to preserve their positions, and they put themselves and their own interests above those of shareholders. When you have shareholder pressure, like can't you say everybody who's subject to shareholder pressure to help the company perform has incentive to keep their job? Because if they don't, if the company's not performing well, they won't keep their job? Here, these are particular allegations. So there was a general allegation. Here, you have particular threats. Even though you might be able to say in the general circumstance of the shareholder pressure, and therefore the officers need to perform better to keep their jobs, here somebody actually said, I'm going to get you fired if you don't perform well. And because somebody specifically said that as opposed to the general condition, that makes it a unique threat? That is correct. Or a benefit or something like that, yeah. So, you know, giving those unique pressures and threats to these particular insiders, they had the motive to conceal the company did not have an adequate accounting procedure. They were overstating the value of their assets, where the activists thought that they were understating the assets. And so they had very specific motive to keep this information from going public because had that been revealed, it's not hard to conclude or infer that the pressure would have ratcheted up and you would have seen an enhanced activist campaign to get rid of management. But through their fraud, they were able to deflect that criticism, thwart the proxy contest, and preserve their positions. So it's a combination of activist shareholders making specific criticisms that the fraud was able to address or conceal. Correct. That makes it unique. Because having activist shareholders critiquing management, that doesn't sound, you know, if that were enough, that would be enough in a number of cases. It doesn't seem all that singular to me. Well, here we have your particular allegations. It's over 19 paragraphs. This isn't, look at the cases the district court cites. It cites the Candy Technologies case where motive is alleged. It's in one paragraph. It's less than one sentence. Very boilerplate, very general. The district court cites the Canadian Solar case and that has a very, you know, very generic allegation that the company wanted to sell its stock in a secondary offering at a high price. There's nothing else there. There's no particularity to it. There's nothing specific. It stands in stark contrast to the particular allegations set forth in the case. Morning, your honors. May it please the court. Tony Luchisano from Baker Botts on behalf of the district court. I would like to begin by saying that I do not support fraud and public disclosures. They do not demand that corporate actors be infallible. And so, when a company makes an accounting misstep and a securities complaint follows in its wake, the court must scrutinize the allegations. To discern whether the inference of scienter, that is an intent to deceive or severe reckless or conscious recklessness that approximates actual intent, is both strong and at inference. Judge Ramos properly exercised that gatekeeping role here. He scrutinized the complaint, rejected the deficient motive allegations, and found the extraneous and boilerplate circumstantial allegations to, quote, did not come close to stating a strong inference of scienter, and certainly not one at least as compelling as a straightforward inference that Gulfport made an accounting error in one quarter only to discover, disclose, and take steps to remediate it in the next. That is what the securities laws aim to encourage, not penalize, and this court should affirm. I'd like to turn... It's a pretty big error, right? 500 million dollars? That's right. And the size of the error alone, courts in the circuit have routinely described as being insufficient, absent more concrete evidence of actual intent or conscious recklessness. In, for instance, the the Dobina case that they cite, a 500 million dollar approximately similar magnitude error was sufficient as to the executive from whom confidential witnesses identified control deficiencies contemporaneously and communicated to him, but insufficient as to the remaining defendants. And here, of course, there are no such particularized allegations connecting it to the speaking executives. I'd like to turn to the motive allegations that have taken up the discussion today. And first, I just... The premise of it all, that Judge Ramos recognized a, quote, unique and significant motive. I think if you look at his opinion, you'll find nowhere where he did that. The sentence is that the motive allegations were not unique and significant enough, and that's certainly true to meet the high bar of motive pleading, but he did not credit them. He applied this court's case law and found that, quote, they failed to demonstrate motive and that they did not establish motive. And in fact, that's what he was bound to do under this court's case law. Because under ECA, a generalizable motive, the one that could be imputed to all courts, quote, does not constitute motive. And Judge Menasche, you cited his application of the sliding scale test, the correspondingly greater test. You apply that and require the correspondingly greater circumstantial allegations when there is, quote, no motive. Now, I think the disconnect in terms of the ubiquity that we're talking about is between the motive on the one hand and the shareholder letters here. We can have a robust debate about how ubiquitous those campaigns are. They look at one-year statistics, and even there, it's over 10 percent of publicly traded companies. But what this court is focused on is the motive that arises, whether it's the generalized stock price inflation motive. Now, setting aside the text of the shareholder letters, we've, in our brief, we've encouraged the court to look at those, and what it will find is that they're not laser focused on Mr. Wood or the CFO, and certainly not on the accounting controls or the topic of this case. And I think it's telling, because if they were, would that make a difference? So if, in fact, activist shareholders said the company is not performing well, we're going to get you out of office if you don't turn it around. Would that create a motive on the part of the officers? I don't think so. A specific threat as to the jobs, because again, in Shields and in CalNet, this court rejected prolonging one's corporate benefits as being that sort of cognizable motive. I think the Credit Suisse case is a good example of perhaps the type of shareholder pressure that could get it out of the ubiquitous mold there. They were pressuring Credit Suisse to shift out of a toxic asset class, and it did so, and the executive reaped a $10.2 million bonus for doing so. Here, the pressure, to the extent we can discern pressure at all from these letters, it was not regarding the carrying value of the oil and gas properties or about accounting control errors. It was generic better performance, really capital expenditure decision making of the board over the course of the last six years. And so when we look to the motive itself, it's no different than in the Canadian Solar case, where there, the factual context was a company on the verge of bankruptcy, and the allegation that the stock price inflation was needed to save the company from bankruptcy, that's a whole lot less ubiquitous. So if in fact there were something to it, there was something to the motive allegations, and there were also something to the circumstantial evidence, would the district court be required to consider those together? I do think under Hain, if there is some but not enough under the motive prong separately, plus concrete, potent, but perhaps not in themselves sufficient circumstantial allegations, yes, under Tellabs, one would be required to mix them together. But I want to be clear about this. Because Judge Ramos applied that sliding scale test, because he had discredited the motive allegations, he did look at the collective whole. He had just observed that there was nothing in the first bucket. And so this is quite unlike Hain, where as... So how does it work? You decide whether there's allegations of motive, and if there are not, you move on to circumstantial evidence. But if the circumstantial evidence is a little bit, is on the cusp, then you go back to motive and see if it can add something to it? I think if you've gone through your motive allegations, if you found them credible, if you've done what Judge Ramos did not do, and what he was properly not to do here, and you find potent circumstantial allegations, then yes, at the end of the opinion, you would include a collective analysis of both. I want to... But you had said a moment ago that the way it works is that you only move on to the circumstantial evidence if you find no motive. Right? No, you only apply the correspondingly greater... Oh, I see. Right. So there's no motive if you say it has to be greater. But if there's some motive, then you look at circumstantial evidence and it can be lesser. Right. And then you look at it collectively. Right. Because in Hain, the court cited ECA and found that the district court hadn't applied that ratcheting down of the circumstantial allegations. So if you're applying the correspondingly greater test, you've already found that there's no motive, and you're properly assessing the only remaining allegations, which are the circumstantial ones. I'd like to turn briefly to the inferences here. Because again, there's a two-part inference way. First, the culpable inference has to be strong. It has to be cogent on its own. We don't think that the inference that Gulfport would make an accounting error in Q3 2019 only to disclose it and remediate it one quarter later when the executives didn't sell a share of stock, in fact, added to their net additions, we don't think that makes the least bit of sense. But the court is obligated to also consider the opposing inference. And Judge Ramos did so here. He found it was simply more compelling that Gulfport found the error and promptly disclosed it. Now, in their reply brief for the first time, plaintiff raises this allegation, really a conclusion, that Grant Thornton's audit finding forced Gulfport to disclose the error. That's really their only answer to the really overt non-culpable inference we have here. I think there's at least three problems with that. The first is under bread and butter rule 9b, that is not a particularized factual allegation. There's no allegations about what Grant Thornton or that Gulfport would not have disclosed the error absent Grant Thornton's audit opinion. Of course, Gulfport's disclosures in Q4 2019 said that management discovered it, that management was taking steps to review. I think it's awfully telling that none of those allegations or even setting that aside, even if that were a factual allegation, the PSL array demands under section b2, a identification of the source when you are making allegations on information and belief, as here the complaint is. That allegation is pulled completely out of thin air. Gulfport's disclosures not only don't support it, they contradict it. There's no confidential witness or identified witness, no documentary source for that allegation at all. And it thus must be rejected under NOVAC and under the PSL array. Finally, several of this court's cases that have affirmed accounting restatement cases, Magnum Hunter for instance, there there were actual allegations of disagreement with the auditors, you know dismissal of the auditors, the auditors coming back and telling the SEC that they disagreed, things that are just simply not here and even that was still a non-plausible, non-plausible culpable inference and a more compelling non-culpable one. We think this is a rather straightforward case that Judge Ramos got precisely right and we'd request the court affirm. Thank you. I'd like to just briefly respond to a couple of the points you just heard. Start with the last one. You know the defendants, they argue that you know that the the inference that the judge drew in their favor that this was an innocent mistake and they self-reported the fraud at the end of the class period and that you know that's more powerful and persuasive than the inference of fraud. You know what they ignore is the complaint. It's paragraph eight and the complaint alleges that at the end of the year there's a financial audit. Grant Thornton comes in and after three quarters of misstating their accounting to investors, Grant Thornton during the year-end audit finds these errors and forces them to do the restatement. The three quarters that are alleged to be false and misleading in the complaint, those were not audited. It's the end-of-the-year audit. Grant Thornton comes in and then defendants say that well there's nothing in the complaint that says it was Grant Thornton. It says management discovered. Setting aside the self-serving disclosures where management says it found and corrected things, if you look at paragraph 91 of the complaint, there's a chronology of how they go through and identify the errors and then go about fixing them. And it's very interesting language they use. They say subsequent to the countervailing, that's Q3 2019, quote immaterial weakness was identified, close quote. Now they don't say who identified it and it's an inference that on the pleading that it was Grant Thornton that identified it. That's the basis for that allegation. It's not unsourced. On a pleading the inferences should go in the plaintiff's favor. That's the allegation that we set out. It's in two paragraphs of the complaint and we think that that undercuts the countervailing inference that it was an innocent mistake and they self-reported it and therefore that that inference was greater than the inference of fraud. That's what Judge Ramos found. It undercuts the argument that it doesn't make any sense for them to misstate the numbers only to correct it a quarter later. But it is still consistent with negligence that their auditor discovered the problem, right? Well it cuts both ways. The accounting errors that they committed here, these were errors of, this was more than negligence, this was reckless accounting and I'll briefly explain it. The process that they said that they were following, GAP and SEC rules, require them to engage in reconciliation of the inputs for their key ceiling test with the books and records on the company concerning the natural gas assets. Reconciliation is just comparing the numbers. There's no subjective judgment or critical analysis. It's just looking at the numbers and they've admitted that they weren't doing that. That's on its face, reckless accounting. So the inference of negligence here in the accounting I think is just undercut by the type of accounting errors that this company engaged in. Thank you. Thank you both. Nicely argued on both sides. We only had one case to be argued today so I will ask the deputy to adjourn court.